**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KELLY L. THOMPSON, )  )  Plaintiff, )  ) FRANCIS CASING CREWS, INC., ET AL.)  )  Defendants. ) | NO.  CIV-05-0776-JH |

**ORDER**

Plaintiff Kelly L. Thompson instituted this action against Francis Casing Crews, Inc. ("Francis Casing") and EOG Resources, Inc. ("EOG") seeking to recover compensatory and punitive damages for injuries he sustained while working on a drilling rig.[1]  Both defendants have moved for summary judgment, which is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).   Having applied the Rule 56 standard to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," Jeffries v. Kansas, 147 F.3d 1220, 1228 (10th Cir.1998) (internal quotation and citation omitted), the court concludes the defendants' motions should be denied.  The pertinent facts follow.[2]

Defendant EOG, an oil and gas operator, hired Abercrombie Energy Corporation

---

[1]*Francis Casing Crews, Inc. of Garden City, Kansas was initially named as a defendant but the parties stipulated to its dismissal.*

[2]*The court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to the plaintiff, the nonmoving party. Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999).*

("Abercrombie") to be the drilling contractor on a well.  Abercrombie was to furnish equipment and labor and perform services "under the direction, supervision and control" of EOG.  EOG's Exhibit 5.  EOG also assumed sole responsibility and liability "for all consequences of operations by both parties while on a daywork basis, including results and all other risks or liabilities incurred in or incident to such operations."  *Id.*  EOG hired Francis Casing to run surface casing in the well.  Francis Casing provided both men and equipment for the job and, in the performance of its work, had "the authority and right to direct and control all of the details of the work," with EOG "being interested only in the result obtained."  EOG's Exhibit 10.  EOG had one representative at the rig, James Purser, who was the "[w]ell site supervisor."  Purser depo., p. 6, EOG's Exhibit 6.  He gave orders to the tool pusher, an Abercrombie employee, who then gave directions to the workers.  Purser depo., p. 8, plaintiff's Exhibit 1.[3]

At the time of the accident the plaintiff, an Abercrombie employee, was assisting Francis Casing's employees with the casing, which had been placed on a platform or "cat walk" near the rig.  The plaintiff would wrap a cable or "pick up line" around the end of a section of casing, which allowed the casing tube to be lifted to the rig floor.  A hook, standard in the industry, was attached to the pick up line, as was another rope, referred to as the "tag line."  The tag line, which also had a hook, is used to pull the pick up line back down to the level of the catwalk after the casing has been lifted, so the process can be

---

[3]*The exhibits attached to the plaintiff's two response briefs are identical, so the court will simply refer to plaintiff's Exhibit __.*

repeated and another section of casing can be lifted. Once the plaintiff wrapped the pick up line around the casing he gave a signal that the casing was ready to be lifted. A Francis Casing employee, Hector Alvarado, referred to by the parties as the "worm,"[4] then signaled and the casing would be raised. Cummings depo., pp. 94-96, plaintiff's Exhibit 5. The spotter was not, however, supposed to signal until the plaintiff was clear of the casing. *Id.*

A safety meeting was held before the workers began to run the casing, during which the plaintiff stated his concern about the hook on the tag line. He testified that that was the first tag line he had seen with a hook, but was told the hook was "EOG policy."[5] Thompson depo., pp. 43-45, plaintiff's Exhibit 4. Steve Shearrer, a Francis Casing employee, testified that Francis Casing had been using the hook about a year before EOG sent out a memo requiring it.[6] Shearrer depo., p. 41, plaintiff's Exhibit 3.[7]

Although the circumstances surrounding the accident are unclear, it is undisputed that just before he was injured the plaintiff had given the signal for the casing to be lifted. The

---

[4]*Although the term is not explained in the materials submitted, a "worm" appears to be a new, inexperienced worker on a rig. This employee also was referred to as the "spotter," Cunningham depo., p. 108, plaintiff's Exhibit 5, and the court will use that designation when referring to him.*

[5]*James Cummings testified that a Francis Casing employee stated during the meeting that it was their hook, "was nothing out of the ordinary," and was ok. Cummings depo., p. 61, plaintiff's Exhibit 5.*

[6]*Shearrer was the "senior guy for Francis" at the well. Shearrer depo., p. 10, plaintiff's Exhibit 3.*

[7]*The casing was lifted from the catwalk to the "V" door. Thompson depo., p. 126, Francis Casing's Exhibit 1. Apparently, the hook eliminated the need to have a ladder up to the "V" door. Thompson depo., p. 130, plaintiff's Exhibit 4.*

plaintiff testified that he then realized that the hook on the tag line had snagged on something.[8] As he attempted to free it, the plaintiff contends he became entangled in the lift line assembly and was lifted along with the casing. The plaintiff then fell and was injured.

<u>Francis Casing Crews</u>

The plaintiff asserts negligence claims against Francis Casing, contending it furnished defective equipment – a tag line with an unnecessary hook – and inadequately trained employees – the spotter who signaled before the plaintiff was clear of the load and failed to pay attention and stop the process when there was a problem. The defendant maintains that because of the complicated mechanical issues, expert testimony regarding oil rig and well standards of care is required to establish the plaintiff's claims and its absence defeats them.[9] Even if expert testimony is not required, Francis Casing asserts that the plaintiff has failed to offer evidence demonstrating that it breached a duty to him.

Specifically, the defendant contends the plaintiff has not shown that its equipment was defective. It asserts that the pick up cable and its hook were consistent with those customarily used for the type of work being done, and the undisputed expert testimony

---

[8]*The evidence as to what happened is unclear – whether a hook got caught in the plaintiff's sleeve or whether it snagged on something and he was trying to release it. Compare Cummings depo., pp. 74-77 with Thompson depo., pp. 126-27; 74-77, Casing Crew's Exhibits 2, 1,and 3. The evidence also is conflicting as to which hook was involved in the accident, the hook on the pick up line or the hook on the tag line. Compare Thompson depo., pp. 113-114 with Shearrer depo., p. 37 and Supervisor's Report of Accident, plaintiff's Exhibits 4, 3, 6.*

[9]*The court previously struck the report of the plaintiff's expert, Nick Kury, as being inadequate, but granted the plaintiff leave to file a proper report, which was not done.*

establishes that the hook on the tag line could not have snagged. The casing company also maintains that the plaintiff cannot establish the element of causation because he caused the accident – despite his training, when he realized there was a problem the plaintiff tried to free the snagged line instead of signaling to stop the process.

If the court will not grant its motion in its entirety, Francis Casing asks that it at least eliminate the plaintiff's punitive damages claim. The plaintiff's evidence is insufficient, the defendant asserts, to allow an award of exemplary damages.

The court finds the plaintiff has submitted sufficient evidence to create a fact question as to whether the spotter, for whose conduct Francis Casing was responsible, was negligent.[10] There is evidence that the spotter's job was to give the signal to lift after the plaintiff was clear and that it was given before the plaintiff had stepped away from the load.[11] Cummings depo., pp. 94-95, plaintiff's Exhibit 5. There also is testimony that the spotter was supposed to continue watching the casing after he gave the lift signal and that, if he had done so, he would have observed the plaintiff having trouble and signaled someone to stop the process. *Id*. at 108-09. Professional expert testimony[12] is not required to determine whether the Francis Casing employee signaled prematurely or whether his conduct caused the plaintiff's

---

[10]*This employee quit his job after the accident and left the country.*

[11]*There is, of course, evidence from which a jury could find that the plaintiff also was negligent.*

[12]*By professional expert, the court is referring to a witness who is retained to provide expert testimony or whose duties as an employee regularly involve giving expert testimony, see Fed.R.Civ.P. 26(a)(2)(B). Other persons not so retained or employed may, if properly qualified and identified, offer such testimony. Fed.R.Evid. 702; Fed.R.Civ.P. 26(a)(2)(A).*

injuries. There also is a fact question as to whether the hook on the tag line created an unnecessary risk to the plaintiff.[13]

A higher level of proof is required to sustain an award of punitive damages. They may be recovered when the jury finds by clear and convincing evidence that the defendant has been guilty of reckless disregard for the rights of others or acted intentionally and with malice towards others. 23 Okla. Stat. § 9.1. There is evidence that Steve Shearrer told Purser during the safety meeting that that he had a new hand on the rig and "he can't be giving directions. You have to have Abercrombie give the directions." Shearrer depo., p. 24, plaintiff's Exhibit 3. A jury could conclude from this evidence that Francis Casing was aware of the danger to someone in the plaintiff's position if an inexperienced person was giving the lift signal, yet nonetheless permitted their new employee to perform that task. Although a close question, the court concludes this evidence is sufficient to avoid summary judgment on the punitive damages issue.[14]

EOG Resources, Inc.

The plaintiff assets a negligence claim against EOG based on its alleged failure to adequately train and supervise the Francis Casing crew and its alleged specification of unsafe equipment for use on the job. EOG contends that expert testimony regarding the process of

---

[13]*The evidence on this issue, alone, would likely be insufficient to permit submission of the plaintiff's negligence claims to a jury.*

[14]*The court will, however, closely examine the evidence at trial and may reconsider its decision on the punitive damages question.*

"running the pipe," including each employee's duties and the equipment involved, is required to establish the plaintiff's claims and its absence defeats them. It also asserts the plaintiff cannot establish any of the elements of its negligence claim – the existence of a duty, a breach of duty or causation – as it did not own the alleged defective hook and its only representative on the site was not involved in the process of running the casing and did not supervise the plaintiff's activities. The mere fact of injury is not enough, EOG argues, to establish negligence and that, the defendant contends, is all that has been shown in this case.

As discussed previously in conjunction with Francis Casing's motion, the court has concluded a fact question exists as to whether the spotter was negligent. The spotter was Francis Casing's employee and, at least under the terms of the EOG-Francis Casing contract, not subject to EOG's control.[15] However, Purser, EOG's employee on site, did give orders to Abercrombie employees through the tool pusher, who was an Abercrombie employee. Purser depo., pp. 6-7 ("My role is to give orders to the tool pusher and he takes care of the laborer."), EOG's Exhibit 6. *See* EOG's Exhibit 5. As Abercrombie employees assisted Francis Casing's employees in the process of running the casing and Shearrer told Purser that an Abercrombie employee was needed to "give the directions," because he had a new hand on the rig, a question exists as to whether EOG bears responsibility for having an

---

[15]*The EOG-Francis Casing contract provided in part: "Company shall have no right or authority to supervise or give instructions to the employees, agents or representatives of Contractor, but such employees, agents or representatives at all times shall be under the direct and sole supervision and control of Contractor. Any suggestions or directions which may be given by Company or its employees shall be given only to the superintendent or to the other person in charge of Contractor's crew." EOG's Exhibit 10, ¶ 5.*

inexperienced person in the spotter's position.[16]  There also is evidence that EOG dictated that the tag line used by Francis Casing have a hook.  Shearrer depo., pp. 39-41, plaintiff's Exhibit 3,.  This evidence, combined with the plaintiff's statements that he had never previously worked with a tag line that had a hook and had expressed concern about the hook getting hung up, and his testimony that the hook did catch on something creates a fact question for the jury as to EOG's liability for the plaintiff's injuries.[17]  Testimony of a professional expert is not required as to these issues.

Accordingly, defendant Francis CasingCrews' motion for summary judgment [Doc. # 61] and defendant EOG's motion for summary judgment [Doc. # 58] are **DENIED**.

---

[16]*EOG asserts that Purser did not supervise Francis Casing or Abercrombie workers, citing pp. 8-9 of Shearrer's deposition testimony. While Purser testified he did not deal directly with the workers, he stated he gave orders which were carried out through the tool pusher and Shearrer. Purser depo., pp. 7-8; Shearrer depo., pp.8-9 (the company man, e.g. Purser, told Shearrer, [w]hat he'd like to have done"), EOG Exhibits 6, D.*

[17]*While there was evidence that the hook attached to the pick up line was standard in the industry, there was no similar proof regarding the hook on the tag line.*

**IT IS SO ORDERED**.

Dated this 4th day of August, 2006.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE